**IN THE UNITED STATES DISTRICT COURT FOR THE**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| HENOK BERHANE GEBREGZHIABER | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | No. 1:25-cv-101 (PTG/WBP) |
| | ) | |
| ANTONIO DONIS, *et al.,* | ) | |
| | ) | |
| *Defendants.* | ) | |

**MEMORANDUM OPINION**

This matter comes before the Court on a Motion for Summary Judgment filed by Defendants Antonio Donis, Director of the Arlington Asylum Office of the U.S. Citizenship and Immigration Services ("USCIS"), and USCIS Director Jennifer B. Higgins. Dkt. 8. Plaintiff Henok Berhane Gebregzhiaber brings a Complaint and Petition for Writ of Mandamus (collectively, "Complaint") before the Court to expedite the adjudication of his Form I-589, Application for Asylum and for Withholding of Removal ("asylum application") before the USCIS. Dkt. 1 ("Compl.") ¶ 8. The Complaint asserts a claim under the Administrative Procedure Act ("APA") for USCIS's purported delay in adjudicating Plaintiff's asylum application. *Id.* ¶ 23. Defendants now seek summary judgment on the basis that USCIS's adjudication of Plaintiff's asylum application has not been unreasonably delayed under the factors set forth in *Telecommunications Research & Action Center v. FCC.* 750 F.2d 70, 80 (D.C. Cir. 1984) ("*TRAC*"). Dkt. 9 at 18-19. For the reasons stated below, the Court grants summary judgment for Defendants.

## FACTUAL BACKGROUND[1]

Plaintiff is a native and citizen of Ethiopia, where he "[f]ear[s] persecution on account of a protected ground." Compl. ¶¶ 7, 8. On January 19, 2022, Plaintiff filed his asylum application on behalf of himself as well as his spouse and three children as dependents before USCIS. *Id.* ¶ 8; Dkt. 9-2 ("Decl. of Antonio Donis") ¶¶ 4, 24. On February 28, 2022, Plaintiff completed a biometrics appointment. Compl. ¶ 9. On June 27, 2022, Plaintiff filed his initial Form I-765, Application for Employment Authorization, which was approved on September 9, 2022. Dkt. 9-2 ¶ 24. On July 15, 2024, Plaintiff applied to renew his employment authorization document ("EAD"), which USCIS approved on February 14, 2025. *Id.* During that interim period, Plaintiff retained his work authorization. *Id.* Plaintiff's current EAD is valid until February 13, 2030, and his spouse and three children have additionally been granted employment authorization. *Id.* While Plaintiff's asylum application is pending, he and his dependents may apply to renew their EADs every five years. *Id.* ¶ 25; *see* 8 C.F.R. § 208.7(b).

Plaintiff's asylum application was initially pending before the San Francisco Asylum Office. Compl. ¶ 10. On October 2, 2024, the application was transferred to the Arlington Asylum Office after Plaintiff moved to Silver Spring, Maryland and submitted a change of address to USCIS. *Id.* As with other asylum offices, the Arlington Asylum Office uses a "Last-In, First-Out" ("LIFO") method to schedule the adjudication of asylum applications. Dkt. 9-1 (Decl. of Ashley Caudill-Mirillo) ¶ 24. "LIFO is a capacity-based scheduling model that prioritizes affirmative asylum applications in three ways . . . applicants who were scheduled for an interview, but needed to be rescheduled at the applicant's or USCIS' request, are prioritized first; applications pending twenty-one (21) days or less since filing are prioritized second; and all other pending

---

[1] The facts here are undisputed by the parties and supported by the record, unless stated otherwise.

applications, starting with newer filings and working back towards older filings, are prioritized third . . . ." *Id.* ¶ 25.

Recently, USCIS began implementing a second parallel track of scheduling to address the growing backlog of pending cases. *Id.* ¶ 32. For applications in the backlog, the Office starts with the oldest cases and works forward in a "First-In, First-Out" ("FIFO") method.[2] *Id.* Collectively, both the LIFO and backlog reduction efforts are hereafter referred to as the "two-track scheduling method."

Currently, the Arlington Asylum Office has 170,000 affirmative asylum applications pending. Dkt. 9-2 ¶ 17. On October 30, 2024, Plaintiff filed a request to expedite adjudication of his application. Compl. ¶ 11. On February 25, 2025, Plaintiff's request was denied. Defs.' Statement of Undisputed Facts ("SUMF"), Dkt. 9 ¶ 10. While he does not dispute the denial, Plaintiff indicates that neither he "nor counsel received notice" of it. Pl.'s Resp. to Defs.' SUMF, Dkt. 14 ¶ 4. Plaintiff has not been scheduled for an interview as of the date of the Complaint. Defs.' SUMF, Dkt. 9 ¶ 12.

## PROCEDURAL HISTORY

On January 21, 2025, Plaintiff filed a Complaint and Petition for Writ of Mandamus seeking to compel Defendants to adjudicate his asylum application. Dkt. 1. The Complaint alleges that Defendants' delay violates the APA (5 U.S.C. § 555) because USCIS must adjudicate Plaintiff's asylum application "within a reasonable time." *Id.* ¶ 23. It additionally states that USCIS has a duty to adjudicate Plaintiff's application under the Immigration and Naturalization

---

[2] Plaintiff suggests that "Defendants rely on inadmissible evidence" on USCIS's current asylum scheduling method. Dkt. 14 at 8. Because USCIS's current methods are available on its public website, the Court takes judicial notice of the information pursuant to Federal Rule of Evidence 201. *See Raihanoune v. USCIS*, No. 1:24-cv-219, 2025 WL 510235, at *1 n.2 (E.D. Va. Feb. 13, 2025) (taking judicial notice of government website information); *see also* Dkt. 9-1 ¶ 27.

Act ("INA") (8 U.S.C. § 1158). *Id.* ¶ 30. Accordingly, Plaintiff seeks relief under the APA and the Mandamus Act (28 U.S.C. § 1361) to compel Defendants to schedule an asylum interview within 30 days and decide the application within 30 days thereafter. *Id.* ¶ 33. As stated, Defendants moved for summary judgment. Having been fully briefed and argued, this matter is ripe for disposition.

## LEGAL STANDARD

Summary judgment is appropriate where a movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When the "nonmoving party has failed to make a sufficient showing of an essential element of [his] case," the moving party is "entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). "[I]n a review of agency action under the APA, '[t]he "entire case" on review is a question of law.'" *LivinRite, Inc. v. Azar*, 386 F. Supp. 3d 644, 650 (quoting *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001)). Here, Defendants have offered declarations by Ashley Caudill-Mirillo, Acting Chief of the Asylum Division, and Antonio Donis, Director of the Arlington Asylum Office, in lieu of a formal administrative record. Dkt. 9 at 18 n.12.

## DISCUSSION

Defendants aver that summary judgment is appropriate here because Plaintiff's asylum application has not been unreasonably delayed under the *TRAC* factors. *Id.* at 18-19. Plaintiff contends otherwise, arguing that USCIS has unreasonably delayed and unlawfully withheld his asylum application. Dkt. 14 at 5, 7. The Court notes, however, that Plaintiff did not raise the unlawful withholding claim in his Complaint. Plaintiff "cannot amend [the] complaint[] through briefing." *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013); *see* Compl. ¶¶ 23-24, 26 (stating an unreasonable delay claim under the APA but no unlawfully withheld claim). Accordingly, the Court will not reach the merits of that claim.[3] As to the unreasonable delay claim, the Court finds that under the *TRAC* factors, Defendants prevail as a matter of law.[4]

---

[3] Even if it did, the claim would fail. A court may compel agency action that is unlawfully withheld only where it is "legally required" with a "mandatory deadline." *Gebremedhin v. Gentry*, No. 1:24-cv-1636, 2025 WL 1139115, at *2 (E.D. Va. Apr. 17, 2025). The INA does not set forth any such deadline, given Congress's timetable that USCIS interview applicants within forty-five days and adjudicate the applications within one hundred eighty days only applies "in the absence of exceptional circumstances." 8 U.S.C. § 1158(d) (5) (A) (ii), (iii). The "rapid increase in asylum applications" constitutes "exceptional circumstances" and undermines any claim of a mandatory congressional deadline. *See Gebremedhin*, 2025 WL 1139115, at *2; *see also* Dkt. 15 at 12 (stating "surges at the southern border and global migration" have created "exceptional circumstances").

Further, Plaintiff's estimate that it would take 172 years for the agency to reach his case, based on a back-of-the-envelope calculation arising from the pace of scheduled interviews, is not persuasive. Dkt. 14 at 6. The estimate assumes Plaintiff's application is at the end of the queue, but at the hearing, Plaintiff conceded that he did not know the position of his pending application.

[4] The Court has jurisdiction over this matter, which the parties do not dispute. The APA permits federal courts to compel "agency action" that an agency must take and has been "unlawfully withheld or unreasonable delayed." *Hyatt v. U.S. Pat. & Trademark Off.*, 146 F. Supp. 3d 771, 780 (E.D. Va. 2015) (quoting 5 U.S.C. § 706(1)). Because Plaintiff has not yet had an initial interview or administrative adjudication—both required actions under 8 U.S.C. § 1158(d)(5)(A)(ii)—the agency has not "fulfilled any mandatory procedures or clear non-discretionary duty to act." *See Raihanoune*, 2025 WL 510235, at *5 (finding no subject matter jurisdiction where agency's initial refusal of visa application constituted an adjudication).

5

The APA requires that "within a reasonable time, each agency shall proceed to conclude a matter presented to it." 5 U.S.C. § 555(b). The standards for unreasonable delay under the APA and Mandamus Act are identical. *Hyatt*, 146 F. Supp. 3d at 781. To determine whether a delay in agency action is reasonable, courts use the "multi-factor standard" articulated in *TRAC*. 750 F.2d at 80; *see also South Carolina v. United States*, 907 F.3d 742, 759 (4th Cir. 2018) (applying the *TRAC* factors to an "unreasonable delay" case). Pursuant to *TRAC*, the Court looks to the following factors to determine if an agency action has been unreasonably delayed:

> (1) the time agencies take to make decisions must be governed by a "rule of reason";

> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;

> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;

> (4) . . . the effect of expediting delayed action on agency activities of a higher or competing priority;

> (5) . . . the nature and extent of the interests prejudiced by delay; and

> (6) the court need not "find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.'"

*TRAC*, 750 F.2d at 80 (citations omitted). Defendants argue that the *TRAC* factors weigh in their favor and warrant summary judgment. Dkt. 9 at 19. Because Plaintiff has not proven that a single factor weighs in his favor, Defendants are entitled to judgment as a matter of law.

### i. First and Second *TRAC* Factors

The first two *TRAC* factors concern whether an agency's decision-making is governed by a "rule of reason," which may be shaped by Congress's statutory scheme laying out a "timetable or other indication of the speed with which it expects the agency to proceed." *TRAC*, 750 F.2d at 80. Defendants argue that both the first and second *TRAC* factors weigh in their favor because

(1) as many courts have previously held, the "combination of [the LIFO] method and a backlog reduction effort . . . creates a rule of reason," and (2) the "exceptional circumstances" of the surge in global migration and asylum applications render Congress's timeline recommendations unenforceable.  Dkt. 9 at 20, 24 (quoting *Tawah v. Mayorkas*, 2024 WL 2155060, at *3 (D. Md. May 14, 2024)).  The Court agrees.

As to factor one, to determine if an agency acts with a rule of reason, the Court examines "the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency." *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1102 (D.C. Cir. 2003).  A rule of reason need only be "just and reasonable." *MCI Telecomms. Corp. v. F.C.C.*, 627 F.2d 322, 340 (D.C. Cir. 1980); *see TRAC*, 750 F.2d at 79.  Courts generally find that "[a]gency decision-making is governed by a rule of reason where the agency's policy has an 'identifiable rationale.'" *Celebi v. Mayorkas*, 744 F. Supp. 3d 100, 106 (D. Mass. 2024) (quoting *Ctr. for Sci. in the Pub. Int. v. FDA*, 74 F. Supp. 3d 295, 300 (D.D.C. 2014)).

The Court finds that the combined LIFO and backlog reduction effort constitutes a "rule of reason."  In doing so, it joins other courts that have consistently held that USCIS's recent two-track scheduling method—relying on both LIFO and the backlog reduction effort—constitutes a "rule of reason." *Belay v. Donis*, 799 F. Supp. 3d 493, 505 (E.D. Va. 2025); *Gebremedhin*, 2025 WL 1139115, at *3; *Bacanak v. Bondi*, No. 1:25-cv-569, 2025 WL 2722647, at *4 (E.D. Va. Sept. 24, 2025); *see also Hossain v. USCIS*, 2025 WL 218828, at *3 (E.D.N.Y. Jan. 16, 2025) ("It follows from LIFO being a rule of reason that a system with an additional parallel track to work through the backlog from the opposite direction remains reasonable."); *Kurt v. Mayorkas*, 2024 WL 5161950, at *4 (N.D. Cal. Dec. 18, 2024) (holding that USCIS's two-track scheduling method "is thoughtfully designed to discourage frivolous filings and manage the backlog").

Plaintiff argues that Defendants have failed to submit "admissible evidence" on the backlog reduction effort to aid this Court's determination on whether a rule of reason exists. Dkt. 14 at 10. Plaintiff further contends that Defendants have omitted "crucial information" about the processing of the backlog, thus undermining whether USCIS adjudicates asylum applications according to a rule of reason. *Id.* at 12. Plaintiff then asserts that the data demonstrates the backlog has increased, the reduction policy "is not being implemented on any meaningful scale," and the Arlington Asylum Office has yet to approach its stated goals. *Id.* at 13. None of these arguments are persuasive.

As an initial matter, because Defendants rely on publicly available data, the Court may take judicial notice of Defendants' evidence under Fed. R. Evid. 201(b). Dkt. 15 at 8; *see also Raihanoune*, 2025 WL 510235, at *1 n.2 (taking judicial notice of publicly available information). Then, as stated above, USCIS need only show an identifiable rationale to abide by a rule of reason, which it has here. Dkt. 9-1 ¶ 32 (describing the two tracks and explaining "this will permit some of the oldest pending cases to be completed in chronological order"), Chart 3 (demonstrating significant increase in pending asylum applications in 2025); Dkt. 9-2, Charts 3, 4, 5, and 6, at 11-14. As the Court noted at the hearing, the rule of reason considers the overall reasonableness of USCIS' approach, rather than any concrete results. USCIS's recent addition of the backlog reduction effort to address the "unprecedented volume of asylum applications," in addition to the LIFO system that courts have already concluded constitutes a "rule of reason," only strengthens that conclusion. Dkt. 9 at 20; *see also Yahya v. Barr*, No. 1:20-cv-01150, 2021 WL 798873, at *3 (E.D. Va. Jan. 19, 2021) (collecting cases on LIFO creating a rule of reason).

Furthermore, Plaintiff's assessment of the data on the backlog lacks important context. While the "backlog *increased* by several thousand cases every month" over the past 13 months, Dkt. 14 at 12, USCIS also received over one million asylum applications in the past two years and

is processing applications at a faster pace. *See* Dkt. 9-1, Chart 2 at 13 (listing total number of asylum applications); Dkt. 9-2, Chart 4, at 12 (3,414 applications adjudicated in just January and February 2025 alone as compared to 4,857 applications adjudicated in *all* of 2023). As Defendants assert, "Plaintiff ignores the fact that the Arlington Asylum Office, which has the ***second most pending applications received in the entire country***, completed *2,232 interviews* in January and February of 2025 alone." Dkt. 15 at 11 (emphasis added); Dkt. 9-2, Chart 5, at 13.

The second *TRAC* factor—whether Congress has prescribed a statutory timeline—also weighs in Defendants' favor. The INA provides that "in the absence of exceptional circumstances, the initial interview . . . on [an] asylum application shall commence no later than 45 days after the date an application is filed" and the administrative adjudication "shall be completed within 180 days after the date an application is filed." 8 U.S.C. § 1158(d)(5)(A)(ii), (iii). This timeline is not binding on USCIS, and an individual cannot sue an agency for failure to comply with it. *See* 8 U.S.C. § 1158(d)(7); *Yahya*, 2021 WL 798873, at *3.

The timeline is especially unenforceable where "exceptional circumstances" exist—as they do here. *Gebremedhin*, 2025 WL 1139115, at *3 ("[T]he increase in the number of asylum applications creates an exceptional circumstance. So, there is no congressional timetable"); *see also Tikhonov v. Mayorkas*, 2024 WL 4692146, at *6 (S.D. Fla. Nov. 6, 2024) ("[T]he time periods in the INA are merely aspirational, and the undisputed facts show there is a substantial backlog and growing number of asylum applications as compared to the number of asylum adjudicators"); *Abdiev v. Garland*, 2024 WL 3742545, at *4 (S.D.N.Y. Aug. 9, 2024) ("Although [p]laintiff's wait has exceeded [the 180-day] time period, Section 1158(d) also has explicit language providing that its processing time periods are not enforceable"); *Tawah*, 2024 WL 2155060, at *3 (quoting *Noumbissie v. Garland*, 2023 WL 8600510, at *2 (D. Md. Nov. 1, 2023)) ("And while Congress

provided the 180-day timeframe within which applications are to be adjudicated, 'it also provided that this timeline is unenforceable and gave the agency discretion to depart from it in exceptional circumstances, such as the current backlog.'").[5] Consistent with other courts' rulings, the Court concludes that the "surges at the southern border and global migration" have created "exceptional circumstances" warranting departure from the congressional timetable. *See* Dkt. 15 at 12; *Tawah*, 2024 WL 2155060, at *3. Therefore, while Plaintiff has waited well over the statutory 45-day timeline for an asylum interview, extraordinary circumstances currently warrant finding that the second factor weighs in Defendants' favor.

    ii.    Third and Fifth *TRAC* Factors

The third and fifth *TRAC* factors relate to health and welfare and similarly weigh in Defendants' favor. The third *TRAC* factor asks whether "human health and welfare are at stake." *TRAC*, 750 F.2d at 80. Plaintiff urges the Court to consider "emotional and psychological harm, not just physical harm." Dkt. 14 at 17. Plaintiff points to the limitations he has faced in obtaining employment in his "chosen field" and the resulting "financial hardship for his family." *Id.* at 18. Courts have made clear that while "mental distress is unfortunate," it is "insufficient to show that Plaintiff's health and welfare are in peril." *Yahya*, 2021 WL 798873, at *3; *see also Gebremedhin*, 2025 WL 1139115, at *4 ("Assertions of stress-related ailments due to the waiting process are insufficient to require an expedited process . . . and, unfortunately, not unique amongst applicants"); *Yakhontova v. Barr*, 2020 WL 4355299, at *3 (C.D. Cal. Apr. 14, 2020) ("While the

---

[5] Earlier cases on asylum applications were more likely to find that the second factor weighs in the plaintiff's favor where the wait time has far exceeded the statutory timeline of 45 days for an initial interview. *See Yahya*, 2021 WL 798873, at *3 (finding that a wait of 1,500 days for an initial interview justified weighing the second factor in plaintiff's favor). However, as demonstrated in the string cite, more recent cases have recognized the exceptional circumstances behind the present immigration situation.

court is sympathetic to the mental distress caused by the uncertainty in plaintiffs' immigration status, plaintiffs are at least able to continue living in the United States while they wait for their application to be adjudicated, and they are authorized to find employment to support themselves").

While not ideal, Plaintiff's status in the United States is relatively stable, and he can "continue living his normal life while he awaits adjudication." *Yahya*, 2021 WL 798873, at \*4; *see also Lajin v. Radel*, 2019 WL 3388363, at \*4 (S.D. Cal. July 26, 2019) (finding that the third and fifth factors favor Defendants because "Plaintiff is able to live his life during the delay without the additional concern of removal or inability to work"). For instance, Plaintiff and his four dependents have received authorization to work in the United States and may renew their authorization every five years. Dkt. 9-2 ¶ 24-25; *see* 8 C.F.R. § 208.7(b). Plaintiff may also apply for advance parole to travel outside of the United States while he awaits adjudication of his application. Dkt. 9-2 ¶ 27. Plaintiff's inability to work in his field while his asylum application is pending cannot alone constitute a health challenge, especially where he and his dependents have other means to mitigate their "financial hardship." *See* Dkt. 14 at 18. Therefore, the third factor weighs in favor of Defendants.

For similar reasons, the Court finds the fifth *TRAC* factor weighs in favor of Defendants. The fifth factor directs the Court to inquire into the "nature and extent of the interests prejudiced by delay." *TRAC*, 750 F.2d at 80. Plaintiff's asserted interest is in receiving an adjudication on his asylum application in order to work in his chosen field. As discussed with respect to the third *TRAC* factor, Plaintiff and his dependents can work and live in the United States while awaiting adjudication without concern of removal. Accordingly, the Court finds that Plaintiff has not demonstrated that he is significantly prejudiced by the delay in the adjudication of his asylum application. Therefore, the fifth factor counsels against granting Plaintiff relief.

    iii.    Fourth *TRAC* Factor

The fourth *TRAC* factor asks what effect expediting Plaintiff's asylum application adjudication would have on "agency activities of a higher or competing priority." *TRAC*, 750 F.2d at 80. Plaintiff argues that scheduling his interview does not necessarily push other applications behind in the queue. Dkt. 14 at 20. Rather, Plaintiff contends his case is "one case out of 161,116 cases pending" in the Office as of December 2024 and would have "an infinitesimally small 0.000627% impact on the other applications." *Id.* To the contrary, Plaintiff's application does not exist in a vacuum. Granting his requested relief would create an untenable precedent and open the door to endless applicants similarly seeking to skip the line. Such relief "would set a dangerous precedent, sending a clear signal that more litigious applicants are more likely to be moved to the top of the proverbial pile over other applications that have waited even longer." *Dmitrenko v. Chertoff*, No. 1:07-cv-82, 2007 WL 1303009, at \*1 (E.D. Va. Apr. 30, 2007) (reviewing an unreasonable delay claim on plaintiff's application for permanent residence before USCIS).[6]

Additionally, as Defendants note, expediting one application "could result in the delay of higher-priority asylum cases, such as those involving credible fear at the border and unaccompanied minors." Dkt. 9 at 27 (quoting *Tawah*, 2024 WL 2155060, at \*3). Plaintiff also does not provide a justification for why his application should skip ahead of similarly situated applications that have been pending for longer. *See* Dkt. 9 at 27-28; *Tikhonov*, 2024 WL 4692146, at \*7 ("Plaintiff provides no legal justification for why USCIS should allow his application to skip the line ahead of others who have been waiting longer").

---

[6] Further, Defendants note in their brief that court-ordered deadlines tax the Arlington Asylum Office's resource constraints. Dkt. 9 at 11.

Furthermore, expediting Plaintiff's application would interfere with "USCIS's autonomy in administering an overloaded system." *Gebremedhin*, 2025 WL 1139115, at *4; *Blanco de Belbruno v. Ashcroft*, 362 F.3d 272, 280 (4th Cir. 2004) ("The Attorney General is charged with balancing the need for adequate protections for asylum seekers against a backlog of [over one million] cases . . . how [USCIS] allocates those resources to address the burden of increasing claims is a calculation that courts should be loath to second guess."); *Mashpee Wampanoag Tribal Council, Inc.*, 336 F.3d at 1100 (reversing the district court's finding of unreasonable delay by an agency in part because the district court failed to consider competing priorities of the agency, especially given "a shortage of resources addressed to an extremely complex and labor-intensive task").[7] Therefore, the fourth factor also weighs in favor of Defendants.

    iv.    Sixth *TRAC* Factor

Finally, because the Court need not consider bad faith in an unreasonable delay claim, the Court finds the sixth *TRAC* factor is neutral. *TRAC*, 750 F.2d at 80 (citations omitted); *see also* Dkt. 14 at 23 (arguing the lack of potential impropriety on Defendants' part does not change the analysis in Plaintiff's favor).

Accordingly, because five out of the six *TRAC* factors weigh in Defendants' favor, the Court grants Defendants' motion for summary judgment.

---

[7] Plaintiff claims *Mashpee* is distinguishable because the plaintiff in that matter had notice of where his application was in the queue of ten applications, review by the Bureau of Indian Affairs took fifteen years, and each application required a three-person team (a historian, a cultural anthropologist, and a genealogist) to evaluate each petition, while having only eleven available staff members. Dkt. 14 at 21-22. The Court finds these distinctions immaterial, especially given USCIS's resource constraints based on the total number of available staff and sheer volume of applications to review.

## CONCLUSION

For the foregoing reasons, the Court grants Defendants' Motion for Summary Judgment.


Entered this ___ day of February 2026.
Alexandria, Virginia.

_____ /s/
Patricia Tolliver Giles
United States District Judge

14